IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-101-KS

| | |
|---|---|
| CHERYL ANN THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court pursuant to Fed. R. Civ. P. 12(c) on the parties' cross motions for judgment on the pleadings [DE # 25 & 27], the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Plaintiff Cheryl Ann Thomas filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability, disability insurance benefits, and supplemental security income. The parties have fully briefed the issues, and the pending motions are ripe for adjudication. On June 7, 2016, the court held oral argument in the matter. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties and considered the arguments of counsel. For the reasons set forth below, the court grants Plaintiff's Motion for Judgment on the Pleadings, denies Defendant's Motion for Judgment on the Pleadings and remands the matter to the Commissioner for further proceedings.

**STATEMENT OF THE CASE**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on November 1, 2011, alleging disability beginning April 4, 2007. (Tr. 17, 96-

97, 130-31, 249.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 96-97, 130-31, 177.) On October 10, 2013, a hearing was held before Administrative Law Judge Carl B. Watson ("ALJ"), who issued an unfavorable ruling on November 8, 2013. (Tr. 27, 34.) Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision.

## **DISCUSSION**

**I.      Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks and citation omitted) (alteration in original) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (internal quotation marks omitted) (first and second alterations in original) (quoting *Craig*, 76 F.3d at 589). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of

an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler,* 715 F.2d 148, 150 (4th Cir. 1983).

**II.     Disability Determination Process**

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c), 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. §§ 404.1520a(e)(3), 416.920a(e)(3).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. (Tr. 27.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since April 7, 2007. (Tr. 19.) Next, he determined that Plaintiff had the following severe impairments: "degenerative disc disease, arthritis to the left shoulder and both knees, bipolar disorder, and schizoaffective disorder." (Tr. 19.) At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-21.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the capacity to perform light work with the following exceptions:

> [S]he cannot reach overhead with the left arm; and she is limited to simple, repetitive, routine tasks in an environment where changes are infrequent and are introduced gradually and where there is only casual interaction with the general public.

(Tr. 21.) At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work. (Tr. 25-26.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies. (Tr. 26-27.)

### IV. Plaintiff's Contentions

#### a. *Mascio v. Colvin*

Plaintiff contends that the ALJ's decision cannot be upheld in light of the Fourth Circuit's intervening decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In *Mascio*, the Fourth

4

Circuit held that the ALJ in that case committed reversible error by (i) failing to conduct a function-by-function analysis of the claimant's impairments; (ii) addressing the claimant's limitations in concentration, persistence, and pace by restricting him to simple, routine tasks or unskilled work; and (iii) determining the claimant's residual functional capacity before assessing his credibility. *Id.*

As in *Mascio*, the ALJ here found that Plaintiff had moderate limitations in concentration, persistence or pace (Tr. 21) but failed to fully account for such limitations in the RFC or to explain why Plaintiff's moderate limitations do not affect her RFC. As the Fourth Circuit explained, an "ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting [a claimant] to simple, routine tasks or unskilled work. . . . [T]he ability to perform simple tasks differs from the ability to stay on task." *Mascio*, 780 F.3d at 638. In this case, the ALJ further restricted Plaintiff to a work "environment where changes are infrequent and are introduced gradually and where there is only casual interaction with the general public." (Tr. 21.) However, these restrictions appear to reflect limitations in Plaintiff's ability to respond appropriately to changes in the work setting and her social functioning, as noted by Dr. Linda Graham, Plaintiff's treating psychiatrist. (Tr.850-51). These restrictions do not appear to relate to Plaintiff's ability to maintain attention and concentration for extended periods of time or to sustain an ordinary routine without special supervision, areas in which Plaintiff was noted to have marked limitations (Tr. 850-51). Nor do these limitations appear to address Plaintiff's ability to work in coordination with or proximity to others without being distracted by them. (Tr. 851).

As the Fourth Circuit determined in *Mascio*, there may be a rational basis for the ALJ's decision not to impose further restrictions as a result of Plaintiff's limitations in concentration, persistence or pace. However, the ALJ failed to provide any explanation, aside from his

5

determination that Dr. Graham's assessment should be given little weight because it is somehow "incongruous."

Dr. Graham completed a four-page Mental Residual Functional Capacity Assessment form, setting forth her diagnoses and prognosis of Plaintiff's mental impairments and further providing her opinions concerning Plaintiff's ability to perform particular work-related functions, including the ability to understand and remember instructions, the ability to carry out instructions and to maintain attention and concentration, the ability to interact with co-workers and the public, and the ability to adapt to changes in the workplace. (Tr. 849-52.) Dr. Graham answered all questions and signed and dated the assessment, yet the ALJ characterized her assessment as "completed in a piecemeal manner" and "incomplete." (Tr. 24.) The ALJ further found her "handwritten [treatment] notes . . . extremely difficult to read and her prognosis . . . undecipherable [sic]." (Tr. 24.) Notwithstanding the fact that Dr. Graham's opinions appear consistent with those provided by Dr. Antonio Puente, a board-certified neuropsychologist who conducted a mental health consultative examination of Plaintiff in February 2012, the ALJ found Dr. Graham's opinions "incongruous" and, therefore, entitled to little weight. (Tr. 24.) He also gave little weight to Dr. Puente's opinions, characterizing his clinical assessment of Plaintiff as "solely based on [Plaintiff's] subjective complaints." (Tr. 25.)

In light of the ALJ's treatment of Dr. Graham's and Dr. Puente's opinions and his lack of explanation as to the reasons for his decision not to impose further restrictions as a result of Plaintiff's limitations in concentration, persistence or pace, the court is unable to say that the ALJ's decision is supported by substantial weight. Accordingly, remand is necessary.

Remand is also warranted due to the ALJ's assessment of Plaintiff's credibility. When making a credibility assessment, an ALJ must first determine whether the claimant's medically

6

determinable impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594–95. Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 96-7p, 1996 WL 374186, at *1.

In this case, the ALJ provided the following analysis regarding Plaintiff's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible for the reasons explained in this decision. Following a thorough review of the evidence of record, the undersigned finds that the claimant's reports to her treating and examining physicians, as well as findings upon objective examination, are generally inconsistent with the claimant's testimony of such significant complaints of dysfunction. Specifically, the claimant's activities of daily living are inconsistent with his [sic] allegations of such significant functional limitations, *but are fully consistent with the residual functional capacity described above*. The record indicates that despite the claimant's complaints and allegations, the claimant testified that she was able to perform household chores, cook, shop for groceries, and walk for exercise, activities which generally reveal functioning at a greater level than alleged. Of note, the claimant's descriptions of her daily activities are representative of a fairly active and carried lifestyle and are not indicative of a significant restriction of activities or constriction of interests. Overall, these activities when viewed in conjunction with the other inconsistencies regarding claimant's allegations of dysfunction, further limit the claimant's credibility in discussing her symptoms.

> While the claimant has received medical treatment since his [sic] alleged onset date, *the medical evidence of record does not reflect any objective abnormalities to suggest that he [sic] is incapable of performing the above residual functional capacity assessment.*

(Tr. 24-23 (emphases added).) The ALJ also addressed the fact that in November 2012 Plaintiff was not taking her medications as prescribed and characterized it as "treatment noncompliance," demonstrating that Plaintiff's "symptoms may not be as disabling as alleged." (Tr. 23.)

The ALJ's credibility assessment is troubling in several respects. First, the ALJ does not explain which of Plaintiff's "reports to her treating and examining physicians" he finds to be inconsistent with her testimony. The only specific instance of information reported to a treating physician was given later in his decision, when the ALJ addressed that in 2008 Plaintiff expressed her desire to go back to work and reported that she stayed active with her grandchildren. However, the notes do not explain what "staying active" with her grandchildren entailed, and Plaintiff testified at the hearing that she would carry her twenty-six pound grandson but that it caused her pain. (Tr. 22, 23.)

Second, the record does not support a finding that "treatment noncompliance" demonstrates Plaintiff's symptoms are not as disabling as alleged. Rather, treatment records reflect that in November 2012 Plaintiff was being treated with multiple medications. As to one of the medications, Plaintiff began taking a different dosage than had been prescribed because it was upsetting her stomach. Plaintiff was otherwise compliant with her medication regimen, and Plaintiff's psychiatrist adjusted the dosage when informed of the side effects experienced by Plaintiff. (Tr. 795-99.)

Additionally, the language used by the ALJ "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Mascio*, 780 F.3d at 639 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). As the

8

Fourth Circuit explained in *Mascio*, an ALJ is required "to 'determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work.'" *Mascio*, 780 F.3d at 639 (alterations in original) (quoting 20 C.F.R. § 416.929(a)). As in *Mascio*, the ALJ here appears to be comparing Plaintiff's functional limitations to the RFC determination already made by the ALJ. Instead, the ALJ should have compared Plaintiff's alleged functional limitations to other evidence in the record. Accordingly, this case must be remanded to the Commissioner for further consideration.

      b.    **Remaining Challenges**

Plaintiff's remaining assignments of error concern matters that are not likely to recur on remand. Accordingly, the court expresses no opinion as to these matters.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #25] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #27] is DENIED and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

This 28th day of September 2016.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge